The defendant also signed the following receipt when the $50 was paid to him by the plaintiff, viz.:

"Received on account of the above the sum of $50. the same to be returned in case title is not passed on the property described above.

    "W. S. Sussman & Co.,               by W. S. Sussman."

. The plaintiff contended upon the trial that such agreement (Exhibit I) was signed simultaneously with the contract of exchange (defendant's Exhibit A), but the defendant insisted that it was afterward. Whatever conflict of testimony there may have been upon the subject was resolved in defendant's favor as we must assume from the judgment rendered. As the defendant earned his commission when the contract of exchange was executed, and nothing further remained to be done on his part (Meltzer v. Straus, decided at the present term of this court, 113 N. Y. Supp. 583), there was no consideration for the agreement above set forth (Exhibit I). Taubenblatt v. Galewski (Sup.) 108 N. Y. Supp. 588, 589, and cases there cited.

It is urged by the defendant, however, that such agreement expresses a consideration other than that "of entering into the contract of exchange," viz., "the sum of one ($1) dollar and other good and valuable considerations," and that there was no evidence that such consideration did not pass. Although there is not direct evidence upon the point, the circumstances surrounding the transaction, which were fully inquired into upon the trial, fairly warrant the inference that no such consideration was given, especially in view of the absence of proof that any consideration whatever passed. Fargis v. Walton, 107 N. Y. 398, 402, 14 N. E. 303. There was no question raised upon the trial as to the employment of the defendant by the plaintiff. No motions were made when the plaintiff rested or at the close of the whole case; and the question of the defect of evidence on this point cannot be raised for the first time on appeal. Bevins' and Rogers' Appellate Court Practice, pp. 74, 79, and cases there cited. But, if the question could be raised, the record discloses ample proof of such employment.

The fact that the defendant acted as a broker for the other party to the exchange appears to have been known to the plaintiff, and the latter cannot, therefore, withhold the payment of the balance of his commission on this ground. Tieck v. McKenna, 115 App. Div. 701, 101 N. Y. Supp. 317.

The judgment should therefore be affirmed, with costs. All concur.

---

(128 App. Div. 711.)

## PINDER v. JENKINS.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

1. MASTER AND SERVANT, (§ 40*)—WRONGFUL DISCHARGE—DAMAGES—OTHER EMPLOYMENT—BURDEN OF PROOF.

    In an action by a servant for wrongful discharge, while the burden of proving that plaintiff might have obtained other employment after his discharge is on defendant, the burden is satisfied, and shifts to plaintiff,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where plaintiff admits on cross-examination that he had not sought other employment since his discharge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 47; Dec. Dig. § 40.*]

2. EVIDENCE (§ 592*)—WEIGHT—EVIDENCE ADDUCED ON CROSS-EXAMINATION.
A defendant satisfies the burden of proof resting on him by drawing out the requisite proof on the cross-examination of plaintiff's witnesses.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 592.*]

Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by William D. Pinder against Ormond Eugene Jenkins. From a judgment for defendant and an order overruling a motion for a new trial, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

L. B. McKelvey, for appellant.
W. P. Butler, for respondent.

CHESTER, J. The action is for damages for an alleged wrongful discharge of the plaintiff from the service of the defendant. The plaintiff gave evidence tending to establish a contract of employment by the defendant to work his farm for the period of one year at an agreed compensation. After working a few weeks, the plaintiff was discharged, as he claims, by the defendant without cause. He was paid for the time he worked, and he seeks in this action to recover the balance of the contract price.

On cross-examination the plaintiff admitted that he had sought no other position after his discharge. In his charge to the jury the court instructed them that, if they found that the defendant had broken his contract with the plaintiff, they could find a verdict in his favor for only six cents. The jury found for the plaintiff, and rendered a verdict for that amount. The appellant insists that the burden rested upon the defendant to show that employment might have been found, or that it had been offered and declined. That undoubtedly is the rule under the authorities. Allen v. Glen Creamery Company, 101 App. Div. 306, 91 N. Y. Supp. 935; Howard v. Daily, 61 N. Y. 362, 19 Am. Rep. 285. But here the defendant satisfied the burden resting upon him when he drew out the fact upon cross-examination of the plaintiff that he had not since his discharge sought to obtain another position. As it was said in Fuchs v. Koerner, 107 N. Y. 529, 530, 14 N. E. 445, it was "the plaintiff's duty to use reasonable diligence in procuring another place of the same kind, in order to relieve the defendant as much as possible from the loss consequent upon his breach of contract." The fact that the defendant satisfied the burden resting upon him by drawing the proof out upon cross-examination, rather than by evidence produced at some other stage of the trial or in some other way, is of no consequence. Ruland v. Waukesha Water Company, 52 App. Div. 280, 65 N. Y. Supp. 87; Milage v.

Woodward, 186 N. Y. 252, 78 N. E. 873. So long as the proof stands in the case uncontradicted, the defendant is entitled to the benefit of it.

The judgment and order should be affirmed, with costs.

SEWELL, J., concurs.

COCHRANE, J. (concurring). We are not at liberty to assume that plaintiff as part of his compensation was to receive maintenance either for himself or his family. Neither in his complaint nor in his testimony does he so state. But the entire contract as alleged and testified to by himself is that he was to receive $35 per month for three months and $50 per month for nine months to work and manage defendant's farm. The judicial mind naturally concludes that, if he was to receive greater or other compensation, he would have said so and for two reasons: First, because his oath as a witness bound his conscience to tell the whole truth and not merely a part thereof; and, second, because it was manifestly to his interest in this instance so to do. On rebuttal his wife was called as a witness, and testified that she was to perform certain household duties which she described. But it does not appear whether she was to perform such duties for her husband or for the defendant, nor that they constituted any part of plaintiff's contract with the defendant, and, again, the judicial mind is forced to the conclusion that they did not constitute any part of such contract for the simple reason that plaintiff has not said so. When plaintiff was wrongfully discharged, he went to work for his aunt on a farm, and held that position down to the time of the trial and received maintenance for himself and his family. Of course, there might have been myriad reasons why he took and kept that position, and never sought any other, but, if there was a single good reason, he alone of all the children of men knew what it was, and once again the judicial mind concludes that had any such reason existed he would have said so not only because he was the only person on earth who could do so, but also because it was to his interest to do so as an excuse for failing to seek other employment. He does not even claim that by his contract with his aunt he was bound to remain with her as much as a single week. We cannot assume that the maintenance of himself and his family which he received from his aunt was worth less than the compensation which he was to receive from defendant. If a man is wrongfully discharged, and it appears as in this case that he has had constant and similar employment elsewhere, it seems to me that it rests upon him to show that the compensation received by him was less than that agreed to be paid by the employer who wrongfully discharged him, for the reason that it is a fact peculiarly within his own knowledge, and, if that is so, then the same principle holds good, even though, as in this case, the substituted employment of the wrongfully discharged employé is compensated otherwise than in money. It may be that plaintiff has been wronged by defendant, but on the record which comes to us we cannot say so without assuming a great many facts which, if true, could and should have been testified to by plaintiff. His contract with defendant as alleged and proved was in no respect unusual, extraordinary, or peculiar. When

discharged, the law required him to make a reasonable effort to find other similar employment. What constitutes a reasonable effort may generally be a question of fact, but the trouble about this case is that no effort whatever was made except to take similar employment with the aunt, and, if there was anything about that employment which was less favorable than the employment which defendant agreed to give or which rendered it expedient or excusable for plaintiff to forego and abandon all efforts for other employment, he should have said so. He is the only person in possession of such facts and should have disclosed them to the court. Hence I favor an affirmance of the judgment.

JOHN M. KELLOGG, J. (dissenting). After plaintiff was·discharged, he was "only bound to use reasonable diligence to procure other employment of the same kind in order to relieve the employer as much as possible from loss consequent upon the breach. He is not bound to look for or accept occupation of another kind." Milage v. Woodward, 186 N. Y. 252–259, 78 N. E. 873, 875. The question is whether the trial justice had the right to decide as a matter of law that upon the facts proven such reasonable diligence had not been shown. The plaintiff was at work for the Edison Electric Company in New York. He answered the defendant's advertisement for a farmer, and the defendant hired him there. By the contract, he with his wife and two small children moved to the defendant's dairy farm in Saratoga county. He was to manage the farm. She was to do some work in the house, baking, cooking, and have charge of the house, and have a woman once or twice a week to help her. They were to live in the house upon the farm. The farm help lived with them, and we assume the expenses of maintaining such house were to be borne by the defendant. At the time of the employment the defendant told him he could get all the men he wanted at Saratoga, that there were 10 different applicants for the position. He was discharged the 16th of January, having been employed since the 24th of December. He had no home in Saratoga county or in New York, and on January 20th he took his family with him to Delaware county, and there managed a farm for his aunt; himself, his wife, and children having their support on the farm. He received no other compensation. After saying that he received no compensation from his aunt except the support of himself and family, this question was then asked him:

"Q. So that you went back to the farm and worked for your aunt for your board ever since, and have not sought to obtain another position? A. No, sir."

This answer is supposed to justify the direction by the court to the jury that, if plaintiff recovered, he could recover but six cents damages. Perhaps the plaintiff was justified in thinking he could not get employment in Saratoga county by the statement of the defendant that he had had various applicants from that county, and that there were ten different applicants for the place. Perhaps he was influenced more or less by the known fact that the cases are quite rare where a man is desired as manager of a farm and himself, his wife,

and two children are housed and furnished with their support, practically as an independent family. Perhaps the fact that he had no home, with his wife and two children dependent upon him, made it necessary for him to do something at once, and to make some provision at least for their support. It may be he thought the probabilities were so strongly against getting a like position at any substantial rate of wages that it was his duty to himself and to the defendant to accept the position with the aunt, and thus secure the support of himself and family, and save the defendant from the expenses thereof. It may be that it was necessary for him to enter into an engagement with the aunt at once in order to secure that place, and therefore he had no opportunity to seek for other employment of the same kind, without imperiling the position thus offered. He might have thought that the arrangement with the defendant was peculiarly fortunate, and that at the then advanced period of the year the opportunities for similar employment were few, and that perhaps no better arrangement could be made than the one he did make with the aunt. It may be true that he acted in bad faith, and was willing to work for the aunt for the support of himself and family, expecting thereby to get larger damages from the defendant. It cannot be said as a matter of law that he acted in good faith or in bad faith. The question is one of a reasonable effort. If the plaintiff honestly took this position believing that it was the best he could do under the circumstances as they then existed, even though he made a mistake, and worked too cheaply for the aunt, the defendant is not to escape thereby from making the plaintiff good for the damage which he caused to him.

The burden of proof is upon the defendant to show that the plaintiff had found other employment or that other and similar employment had been offered and declined, or at least that such employment might have been found. Milage v. Woodward, supra. If he made no effort whatever, that is a circumstance which might have a bearing upon the question whether he could have obtained similar employment. It is assumed that, if he made no effort whatever to get work, that would satisfy the burden of proof. That rule applies less strongly in a case of this kind where the employment was unusual in its terms, carrying with it, not only the labor of the plaintiff, but certain labor of the wife, with a house maintained by defendant for them to live in and manage. Such places naturally would be rare, and a failure to look for such a place might not carry with it the same evidence of bad faith, and imply the same desire to mulct the defendant in costs as would be the case if it was the employment of a man in an ordinary business upon ordinary terms. From the peculiar nature of this contract the rigid rule of law cannot be applied to it with the same severity as in many other cases. In any event, it would not be fair to assume upon the evidence in this case that the plaintiff acted in bad faith, and was seeking to make his recovery against the defendant as large as possible.

I think it was error to take the case from the jury, and that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

SMITH, P. J., concurs.